1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                                 DISTRICT OF NEVADA

8                                          * * *

9   MYREE D. RUPRACHT, individually and as          )
    Trustee of the ROBERT AND MYREE                  )
10  RUPRACHT FAMILY TRUST, ePlanning,                )        3:11-CV-00654-LRH-VPC
    Inc., a Delaware Corporation,                    )
11                                                   )
                    Plaintiffs,                      )        ORDER
12                                                   )
      v.                                             )
13                                                   )
    CERTAIN UNDERWRITERS AT LLOYD'S                   )
14  OF LONDON SUBSCRIBING TO POLICY                  )
    NO. B0146LDUSA0701030, a foreign insurer;        )
15  and DOES 1-X,                                    )
                                                     )
16                  Defendants.                      )
                                                     )
17

18         Before the court are Defendant's Motion to Dismiss (#7[1]) and Motion to Strike (#10).

19  Plaintiffs filed a response to the Motion to Dismiss (#18), to which Defendants replied (#21). Both

20  parties have filed Supplements to their original filings with respect to the Motion to Dismiss (#22,

21  #23, #24). Plaintiffs have also filed a Non-Opposition to Defendant's Motion to Strike (#16).

22  **I.      Facts and Procedural History**

23         This is an insurance dispute stemming from an investment gone bad. In 2000, Plaintiff

24  Rupracht and her husband invested in a life insurance policy on the recommendation of their

25

26
    _____
         [1]Refers to the court's docket entry number.

financial advisor Gary Armitage, a principal of the brokerage firm ePlanning, Inc. Armitage

mismanaged Rupracht's investment, and the policy steeply declined in value.[2] In April 2007,

Rupracht sued Armitage in Nevada state court for breach of contract, breach of fiduciary duty,

deceptive trade practices, negligence and negligent supervision, accounting, fraud, and negligent

misrepresentation. The case was removed to federal court and then directed to arbitration.

Arbitration was unsuccessful because ePlanning was bankrupt. In subsequent bankruptcy

proceedings, ePlanning and Rupracht settled for a stipulated judgment of $100,000 plus the

assignment of ePlanning's rights under its Directors and Officers Liability Policy (the "D&O"

policy). Defendant Brit UW Limited ("Brit"), a foreign entity, is the sole underwriter of the D&O

policy.

Following the assignment of rights, Brit denied Rupracht's insurance claim (submitted on

behalf of ePlanning). Stepping into ePlanning's shoes, Rupracht has sued Brit for the stipulated

judgment amount. The substantive causes of action are breach of contract (with ePlanning) and

breach of the duty of good faith (with respect to ePlanning).

Defendant now moves to dismiss in part the Complaint for failure to state a claim under

Rule 12(b)(6).

## II.     Legal Standard

Defendant seeks dismissal of the complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).  To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the

Federal Rule of Civil Procedure 8(a)(2) notice pleading standard.  *See Mendiondo v. Centinela*

*Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008).  A complaint must contain "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

---

[2] Alegedly, Armitage ran a Ponzi scheme that defrauded over 1,000 victims of approximately $200 million. ePlanning and Armitage are now the subject of federal and state criminal proceedings. *Ambrosio et al. v. Certain Underwriters at Lloyd's Under Policy No. B0146LDUSA0701030*, No. 3:11-cv-04956-RS, slip op. at 12 n. 1 (N.D. Cal. Mar. 29, 2012).

1   The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a

2   pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a

3   cause of action" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell*

4   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

5          Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter,

6   accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 1949 (internal

7   quotation marks omitted). A claim has facial plausibility when the pleaded factual content allows

8   the court to draw the reasonable inference, based on the court's judicial experience and common

9   sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50. "The plausibility

10  standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

11  defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a

12  defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

13  relief." *Id.* at 1949 (internal quotation marks and citation omitted).

14         In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as

15  true. *Id.* (citation omitted). However, "bare assertions . . . amount[ing] to nothing more than a

16  formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth."

17  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951)

18  (alteration in original) (internal quotation marks omitted). The court discounts these allegations

19  because they do "nothing more than state a legal conclusion – even if that conclusion is cast in the

20  form of a factual allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.) "In sum, for a complaint to

21  survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from

22  that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting

23  *Iqbal*, 129 S. Ct. at 1949).

24  **III.    Discussion**

25         Brit advances two arguments in its Motion to Dismiss: first, that Rupracht's insurance claim

26  is not covered by the D&O policy; and second, that the claim is excluded from coverage under a

3

1 professional services exclusion. The court addresses these arguments in turn.

2       **A.  Timeliness of Rupracht's insurance claim**

3       Brit objects that Rupracht's claim under the D&O policy was filed before the inception of

4 the policy, and therefore that Brit does not owe coverage for this claim. Both Brit and Rupracht

5 agree that the policy at issue extended from September 1, 2007 until September 1, 2008. Both agree

6 that Rupracht filed an action against Armitage on April 4, 2007. And both seem to agree that

7 California law governs the claims that ePlanning has against Brit. These three premises direct the

8 court to grant Brit's Motion to Dismiss, with leave for Rupracht to amend.

9       The D&O policy is a "claims made" policy, meaning that the policy "applies only to a claim

10 first made during the policy period." (Fox Decl. (#8) at Ex. G, p. 2.) The policy defines "claim" in

11 part as "any civil, criminal, administrative or regulatory proceeding initiated against any of the

12 Assureds," where the "Assureds" are the company and its directors and officers–here, ePlanning

13 and Armitage. (*See* Fox Decl. (#8) at Ex. F, p. 1.) Under California law, a "claims made" policy

14 does not cover claims made before the policy period. *See Evanston v. OEA, Inc.*, 566 F.3d 915,

15 919-20 (9th Cir. 2009) (applying California law and noting that "[b]ecause the claims were made

16 prior to the policy period, they were not even potentially covered"); *Carlson v. Century Surety Co.*,

17 832 F. Supp. 2d 1086, 1092 (N.D. Cal. 2011) (holding that claims made before the policy period

18 under a "claims made and reported" provision were not covered).

19       Thus, Rupracht's suit against Armitage constituted a potential claim under the D&O policy.

20 Yet this claim was made in April 2007–several months before the undisputed inception of the D&O

21 policy identified in the Complaint.[3] Therefore, Rupracht's April 2007 lawsuit is not covered by the

22 D&O policy.

23       To avoid this result, Rupracht claims that Brit is estopped from making this argument by the

24 "mend the hold" doctrine. Under this common law doctrine, a party to a contract cannot first give

25

26

---

[3] The policy at issue is numbered B0146LDUSA0701030, as noted in the caption of this action.

1   one reason for his refusal to perform and then give a different reason after the onset of litigation.

2   *See Harbor Insurance Co. v. Continental Bank Corp.*, 922 F.2d 357, 363 (7th Cir. 1994) ("A party

3   who hokes up a phony defense to the performance of his contractual duties and then when that

4   defense fails (at some expense to the other party) tries another defense for size can properly be said

5   to be acting in bad faith.") However, California–whose law governs here–has not adopted the mend

6   the hold doctrine. Instead, California applies "the general rule that waiver requires the insurer to

7   intentionally relinquish its right to deny coverage and that a denial of coverage on one ground does

8   not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated

9   in the denial." *Waller v. Truck Insurance Exchange, Inc.*, 900 P.2d 619, 636 (1995).

10       In its declination letter, Brit did not provide any evidence of an intent to "relinquish its right

11   to deny coverage" on any ground. Rather, Brit reserved "the right to raise policy provisions and

12   defenses not discussed [in the declination letter] that may in the future be determined to be

13   applicable." (Defendant's Motion to Dismiss (#7) at Ex. G, p. 7.) Moreover, even if California had

14   adopted the mend the hold doctrine, this reservation of rights would prevent its operation.[4] Thus,

15   Brit is not estopped from raising its timeliness defense.

16       Since there is no potential for coverage under the D&O policy, Rupracht has failed to state a

17   claim upon which relief can be granted. Rupracht alleges that there may be "potential policies"

18   under which her claims *are* covered and that discovery would be a useful tool to find them.

19   (Plaintiff's Opposition to Motion to Dismiss (#18) at 9:4-10.) But "[f]actual allegations must be

20

21       [4] In almost all jurisdictions to have adopted the mend the hold doctrine, this doctrine
contemplates the other party's detrimental reliance on the original reason for the refusal to perform.
22   *See* Robert H. Sitkoff, Note, *"Mend the Hold" and Erie: Why an Obscure Contracts Doctrine Should
Control in Federal Diversity Cases*, 65 U. Chi. L. Rev. 1059, 1068-71 (1998) (describing the mend the
23   hold doctrine in twelve states and the District of Columbia). And in the one jurisdiction that does not
require detrimental reliance, a general reservation of rights avoids waiver of additional defenses. *See*
24   *Standard Fire Insurance Co. v. Donnelly*, 689 F. Supp. 2d 696, 703-04 (D. Vt. 2010) (applying
Vermont law). Rupracht has made no showing of detrimental reliance, and Brit has effectively reserved
25   its rights. Therefore, Brit is not estopped from asserting its timeliness defense by any incarnation of
the mend the hold doctrine.
26

enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and these "potential policies" are theoretical, not demonstrable. *See Mirriam-Webster's Collegiate Dictionary* 1126 (10th ed. 2001) (defining "speculative" as "theoretical rather than demonstrable (knowledge)").

However, Rupracht is granted leave to amend her complaint. The liberal policy under the Federal Rules permits amendment "when justice so requires." Fed. R. Civ. P. 15(a)(2). Brit excerpted portions of the D&O policy in its submissions to the court. In particular, it omitted a document entitled "Renewal Application for Directors, Officers and Company Liability Policy" signed by ePlanning's CEO in August 2007.[5] This document suggests that a prior D&O policy may have been in place when Rupracht filed her claim April 2007. Since it appears that Rupracht is unaware of any renewal application, and bearing in mind the admonition that "[e]ach party to an insurance contract shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract . . . and which the other has not the means of ascertaining," Cal. Ins. Code § 332, Rupracht is given leave to amend her complaint.

### B. Professional services exclusion

Amending the complaint will be a waste of time, however, if Rupracht alleges the exact same causes of action. In its Motion to Dismiss, Brit objects that Rupracht's causes of action fall under the D&O policy's professional service exclusion. In full, this exclusion reads

> Underwriters shall not be liable to make any payment in connection with any Claim . . . for any act, error or omission in connection with the performance of any professional services by or on behalf of the Company for the benefit of any other entity or person.

---

[5] The full D&O policy–or at least a policy with the same name, the same policy number, and the same text–appears as an exhibit offered by Brit in a case of which Brit requested the court take judicial notice, *Ambrosio et al. v. Certain Underwriters at Lloyd's Under Policy No. B0146LDUSA0701030*, No. 3:11-cv-04956-RS (N.D. Cal. Mar. 29, 2012). "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds). However, the court does not take judicial notice of the *Ambrosio* D&O policy because its contents cannot be "accurately determined from sources whose accuracy cannot be questioned." Fed. R. Evid. 201.

1  (Defendant's Motion to Strike (#10) at Ex. B, p. 13.) The term "professional services" is nowhere

2  defined. Rupracht counters that the "act, error or omission" language of the exclusion is

3  complementary to the covered "Individual Acts," which include

4        any actual or alleged error, omission, misstatement, misleading statement, neglect or breach
      of duty by any of the Directors and Officers, while acting in their capacity as: a director or

5        officer of the Company . . . .

6  (*Id*. at p. 3.) In essence, Rupracht claims that if an act–like a "misstatement"–is covered as an

7  Individual Act, it may not be excluded under the professional services exclusion.

8        The court disagrees. Under California law, "[i]nsurance policies are contracts and therefore

9  subject to the rules of construction governing contracts." *Safeco Insurance Co. of America v.*

10  *Robert S.*, 28 P.3d 889, 893 (Cal. 2001). The interpretation of the terms of an insurance policy may

11  be a question of law, suitable for resolution on a motion to dismiss, where interpretation does not

12  turn on extrinsic evidence. *See Powerine Oil Co., Inc. v. Superior Court*, 118 P.3d 589, 597 (Cal.

13  2005). As with other contracts, courts interpret insurance policies to honor the parties' intent.

14  *MacKinnon v. Truck Insurance Exchange*, 73 P.3d 1206, 1212-13 (Cal. 2003). Thus, the plain

15  meaning of policy terms governs unless the parties intended a special or technical meaning. *Id*. at

16  1213.

17        However, insurance policies are generally interpreted in favor of coverage, with exclusions

18  interpreted narrowly against the insurer. *Id*. The insurer bears the burden of phrasing exclusions in

19  "clear and unmistakable language." *Id*. (citation omitted). Therefore, ambiguous policy terms are

20  "interpreted broadly" so as to "protect the insured's reasonable expectation of coverage." *Id*. Yet

21  courts should avoid interpretations of exclusions that "insert what has been omitted," *Safeco*, 28

22  P.3d at 893, and California courts have interpreted professional service exclusions broadly, *Young*

23  *v. Illinois Union Insurance Co.*, 366 Fed. Appx. 777, 778 (9th Cir. 2010).

24        Here, Rupracht's interpretation of the professional services exclusion is incomplete.

25  Rupracht asserts that *all* errors, omissions, misstatements, misleading statements, negligence and

26  breaches of duty are covered under the D&O policy because these misdeeds are included as covered

1   "Individual Acts". (Plaintiff's Response (#18) at p. 7:3-4.)  While these misdeeds are included in

2   the definition of "Individual Act," they are subject to an important modifier: directors and officers

3   are liable for these misdeeds only "while acting in their capacity . . . as a director or officer."[6]

4   Rupracht's omission of this modifier leads her to suggest that, for example, Armitage's negligence

5   as a financial advisor is not an "act, error or omission" under the professional services exclusion.[7]

6   But this strange conclusion only follows if one fails to separate Armitage's role as a director of

7   ePlanning from his role as a financial advisor to the Ruprachts. The two contractual provisions at

8   issue here–the definition of "Individual Act" and the professional services exclusion–clearly

9   contemplate separating these two roles.

10       Rupracht's claims against Brit stem from Armitage's misconduct in the advisor role, not in

11   the director role. In his capacity as advisor, Armitage shepherded Rupracht's life insurance

12   investments from one risky position to another, letting at least one policy lapse in the process. (See

13   Plaintiff's Response to Supplemental Memorandum of Points and Authorities (#23), Ex. 1, p. 1-9.)

14   This misconduct falls within the definition of "professional services" as interpreted by California

15   courts: services "arising out of a vocation, calling, occupation, or employment involving

16   specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or

17   intellectual rather than physical or manual." *Tradewinds Escrow, Inc. v. Truck Insurance*

18   *Exchange*, 97 Cal. App. 4th 704, 713 (2002). As another court, considering the same policy,

19   concluded, "A . . . financial advisor who receives a client's funds for the purpose of investment,

20

21       [6] There are still other qualifiers that neither party addresses.

22
23       [7] The argument is that a contrary interpretation would render the term "neglect" in the definition
     of "Individual Act" meaningless. (Plaintiff's Response (#18) at p. 7:4-8.) If Armitage's neglect falls
24   under the "act, error or omission" language of the professional services exclusion, the argument goes,
     then the term "neglect" in the definition of "Individual Act" does no work. This is contrary to the
25   injunction that "a contract may not be interpreted in a manner which would render one of its terms
     meaningless." *Kavruck v. Blue Cross of California*, 108 Cal. App. 4th 773, 783 (2003) (citations
26   omitted). Therefore, Armitage's neglect must not be an "act, error or omission" under the professional
     services exclusion.

1  and then . . . mismanages the assets he or she recommends and subsequently acquires on the

2  client's behalf, commits wrongs 'in connection with the performance of professional services.'"

3  *Ambrosio et al. v. Certain Underwriters at Lloyd's Under Policy No. B0146LDUSA0701030*, No.

4  3:11-cv-04956-RS, slip op. at 13 (N.D. Cal. Mar. 29, 2012). This court finds the *Ambrosio* analysis

5  persuasive.

6        Since the D&O policy specifically excludes coverage for professional service claims, and

7  since Rupracht has only alleged professional service claims, Rupracht's complaint must be

8  dismissed. However, the court grants leave to Rupracht to amend her complaint because "of the

9  extensive misconduct alleged by plaintiffs, and the liberal policy permitting amendment."

10 *Ambrosio*, slip op. at 14 (discussing similar plaintiffs and the same defendant). If Rupracht elects to

11 amend and has a good faith basis for doing so, she may amend her pleadings to allege facts

12 supporting claims that do not fall under the professional services exclusion.

13        **C. Motion to strike**

14        Brit has also moved to strike the portions of Rupracht's complaint relating to claims for

15 punitive damages and claims against fictitious defendants. (Defendant's Motion to Strike (#10) at

16 p. 2.) The motion is unopposed. (Plaintiff's Non-Opposition to Defendant's Motion to Strike (#16)

17 at p. 2.) Therefore, the Motion to Strike is granted without leave to amend.

18        IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (#7) is GRANTED.

19 Plaintiff is granted leave to file an amended complaint within 20 days of the date of this Order.

20 Defendant's Motion to Strike (#10) is GRANTED without leave to amend.

21        IT IS SO ORDERED.

22        DATED this 25th of September, 2012.

23

24        _____

25        LARRY R. HICKS
          UNITED STATES DISTRICT JUDGE

26